UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                        :
COLLEEN M. DELANEY,                                     :
                                                        :
                          Plaintiff,                    :
                                                        :
          -against-                                     :
                                                        :        No. 1:19-cv-04085  (LAP)
THOMAS FORTUNE FAY et al.,                              :
                                                        :
                          Defendants.                   :
                                                        :
                                                        :
                                                        :
-------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................ 1

STATEMENT OF RELEVANT FACTS ................................................. 3

LEGAL STANDARD ....................................................................... 6

ARGUMENT ................................................................................ 7

I.     Plaintiff's Claims Are Barred By The Statute Of Frauds Because The Alleged Oral Contract Continued Indefinitely Beyond One Year ........................................... 7

II.    Plaintiff's Claims Are Barred By The Statute Of Limitations Because They Accrued Over Six Years Ago ................................................................. 9

III.   Plaintiff Has Failed To State A Claim Under Rule 12(b)(6) Because She Has Failed To Make Any Specific Allegations That Plausibly Entitle Her To Relief ...... 12

    A.    Plaintiff Has Not Stated A Claim For Breach Of Contract (Counts I-VIII) Because She Has Not Plausibly Alleged That A Contract Existed .................... 12

    B.    Plaintiff's Unjust Enrichment And Quasi-Contract Claims (Count IX, XI) Impermissibly Duplicate Her Barred Breach Of Contract Claim ............... 14

    C.    Plaintiff's Constructive Trust Claim (Counts X and XI) Fails Because She Has Not Plausibly Alleged A Fiduciary Relationship With Defendants Or A Transfer ........................................................... 15

    D.    Plaintiff Has Not Stated A Claim Of Promissory Estoppel (Count XIII) Because She Cannot Show A Clear Promise, Reliance, Or Any Unconscionable Injury ......................................................... 17

IV.   The Fay And Perles Defendants Have Zero Relationship To Plaintiff And Should Not Be Parties To This Suit ................................................... 18

CONCLUSION ............................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Almeciga v. Ctr. for Investigative Reporting, Inc.,*
185 F. Supp. 3d 401 (S.D.N.Y. 2016) ..................................................6, 7, 9, 14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).............................................................................................6

*Atateks Foreign Trade Ltd. v. Dente,*
798 F. Supp. 2d 506 (S.D.N.Y. 2011) .......................................................... 15, 16

*Bank Markazi v. Peterson,*
136 S. Ct. 1310 (2016) .......................................................................................4

*Bazak Int'l Corp. v. Tarrant Apparel Grp.,*
347 F. Supp. 2d 1 (S.D.N.Y. 2004) ...................................................................15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).......................................................................................6, 12

*Bettan v. Geico Gen. Ins. Co.,*
745 N.Y.S.2d 545 (N.Y. App. Div. 2002) ........................................................15

*Campos v. City of N.Y.,*
No. 10-cv-493-JSR, 2010 WL 3912493 (S.D.N.Y. Sept. 13, 2010) ......................4

*Cargo Partner AG v. Albatrans Inc.,*
207 F. Supp. 2d 86 (S.D.N.Y. 2002) .................................................................20

*Chem. Bank v. City of Jamestown,*
122 A.D.2d 530 (N.Y. App. Div. 1986) ............................................................17

*Childers v. N.Y. & Presbyterian Hosp.,*
36 F. Supp. 3d 292 (S.D.N.Y. 2014) .................................................................19

*Country-Wide Leasing Corp. v. Subaru of Am., Inc.,*
520 N.Y.S.2d 24 (N.Y. App. Div. 1987) ...........................................................18

*Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.,*
568 F. Supp. 2d 329 (S.D.N.Y. 2008) ..........................................7, 8, 9, 17, 18

*Diversified Grp., Inc. v. Daugerdas,*
139 F. Supp. 2d 445 (S.D.N.Y. 2001) ...............................................................15

*Duckett v. Williams*,
   86 F. Supp. 3d 268 (S.D.N.Y. 2015) ........................................................ 6, 12, 13

*Elie Int'l, Inc. v. Macy's W. Inc.*,
   965 N.Y.S.2d 52 (N.Y. App. Div. 2013) ............................................................ 10

*Farrell v. Comstock Grp., Inc.*,
   621 N.Y.S.2d 325 (N.Y. App. Div. 1995) ........................................................... 16

*Four Star Capital Corp. v. Nynex Corp.*,
   183 F.R.D. 91 (S.D.N.Y. 1997) .................................................................... 6, 9

*Gilman v. Marsh & McLennan Cos.*,
   868 F. Supp. 2d 118 (S.D.N.Y. 2012) ................................................................. 4

*Glenn v. Fay*,
   281 F. Supp. 3d 130 (D.D.C. 2017) ................................................................. 20

*Golden Pac. Bancorp v. FDIC*,
   273 F.3d 509 (2d Cir. 2001) ....................................................................... 14

*Gutkowski v. Steinbrenner*,
   680 F. Supp. 2d 602 (S.D.N.Y. 2010) ............................................................... 10

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015) ................................................................. 6

*Holloway v. King*,
   361 F. Supp. 2d 351 (S.D.N.Y. 2005) ................................................................. 8

*Huang v. Siam Commercial Bank Pub. Co.*,
   247 F. App'x 299 (2d Cir. 2007) ................................................................... 10

*Integra FX3X Fund, L.P. v. Deutsche Bank, AG*,
   No. 14-cv-8400-JPO, 2016 WL 7009057 (S.D.N.Y. Nov. 29, 2016) ................................... 13

*Johnson & Johnson v. Am. Nat'l Red Cross*,
   528 F. Supp. 2d 462 (S.D.N.Y. 2008) ............................................................... 17

*Marshall v. Hyundai Motor Am.*,
   51 F. Supp. 3d 451 (S.D.N.Y. 2014) ................................................................. 14

*In re Mid-Island Hosp., Inc.*,
   276 F.3d 123 (2d Cir. 2002) ....................................................................... 16

*Montgomery v. Futuristic Foods, Inc.*,
411 N.Y.S.2d 371 (N.Y. App. Div. 1978) .......................................................................7, 9

*N. Shipping Funds I, LLC v. Icon Capital Corp.*,
921 F. Supp. 2d 94 (S.D.N.Y. 2013) .......................................................................6

*Philo Smith & Co. v. USLIFE Corp.*,
554 F.2d 34 (2d Cir. 1977) .......................................................................18

*Prestige Brands Inc. v. Guardian Drug Co.*,
951 F. Supp. 2d 441 (S.D.N.Y. 2013) .......................................................................12, 13

*Smith v. Mikki More, LLC*,
21 F. Supp. 3d 276 (S.D.N.Y. 2014) .......................................................................6

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008) .......................................................................4

*Two Clinton Square Corp. v. Friedler*,
459 N.Y.S.2d 179 (N.Y. App. Div. 1983) .......................................................................11

*Waldman v. Englishtown Sportswear, Ltd.*,
460 N.Y.S.2d 552 (N.Y. App. Div. 1983) .......................................................................16

*Walter H. Poppe Gen. Contracting, Inc. v. Town of Ramapo*,
721 N.Y.S.2d 248 (N.Y. App. Div. 2001) .......................................................................15

*Weber v. Multimedia Entm't, Inc.*,
No. 97-cv-0682-PKL, 1998 WL 2550 (S.D.N.Y. Jan. 5, 1998) ............................................16

*Williams-Guillaume v. Bank of Am., N.A.*,
14 N.Y.S.3d 466 (N.Y. App. Div. 2015) .......................................................................10

**Statute**

N.Y. Gen. Oblig. Law § 5-701(a)(1) .......................................................................1, 7

**Rule**

N.Y. C.P.L.R. 213(1)-(2) .......................................................................1, 10

**Other Authorities**

*Beirut Bombing Victims Win A Nearly $2 Billion Judgment In New York*,
    Reuters Gulf Fin. News (Mar. 23, 2013) ...............................................................................4

Daniel Wilson, *Victims of '83 Iran-Backed Attack Want $2.7B from HSBC*,
    Law360 (Jan. 28, 2013), https://www.law360.com/ articles/410610/victims-
    of-83-iran-backed-attack-want-2-7b-from-hsbc ...................................................................11

Glenn Kessler, *Iran Must Pay $2.6 Billion for '83 Attack*,
    Wash. Post (Sept. 8, 2007) ...................................................................................................11

# PRELIMINARY STATEMENT

This is a breach of contract case without a contract. Plaintiff Colleen M. Delaney is seeking an incredible $53.4 million in attorneys' fees for ten months of internet research she allegedly performed in connection with the protracted litigation in *Peterson v. Islamic Republic of Iran*, No. 1:10-cv-04518-LAP ("*Peterson*"). She claims that she was hired in 2001 on a temporary basis by Defendant Allen L. Rothenberg, and alleges that he agreed to pay her "*one-third of net attorneys' fees*" that he and Defendants Thomas Fortune Fay and Steven R. Perles ever managed to collect in *Peterson*, whenever and if ever that came to pass. Compl. ¶ 28 (emphasis added). Despite the enormous implications of this promise, Delaney never wrote down or memorialized this alleged agreement—even after the *Peterson* plaintiffs obtained judgments totaling $2.6 billion. Instead, eighteen years later, she seeks to enforce an alleged oral contract for $53.4 million.

Plaintiff's Complaint should be dismissed because her claims are all foreclosed by New York's statute of frauds, which requires a written agreement for any contract that cannot be fully performed by both parties within one year. N.Y. Gen. Oblig. Law § 5-701(a)(1). Here, Delaney admits that Defendants could not perform their alleged contractual obligations for an indefinite time—and in no way within a year—since her alleged payment was conditioned on future events that were speculative at best when she and Rothenberg made their alleged agreement. In these circumstances, the statute of frauds requires a writing to memorialize any contract, but Delaney herself alleges only an oral agreement. That alleged agreement is void and unenforceable under bedrock New York law. Since all of Delaney's claims depend on the enforceability of this alleged oral contract, the statute of frauds warrants dismissal of this entire action with prejudice.

Even if Plaintiff's alleged oral contract of indefinite length somehow were enforceable, Plaintiff's claims are also barred by New York's six-year statute of limitations, which lapsed *years* ago. N.Y. C.P.L.R. 213(1)-(2). Indeed, Delaney already attempted to claim a portion of the

1

attorneys' fees by applying for a lien against the Qualified Settlement Fund ("QSF") in 2017, but even that was rejected by this Court as untimely. Delaney could have brought claims in 2006 or, at the latest, in March 2013 following the Court's turnover judgment. Either way, her claims brought in May 2019 are plainly barred by the statute of limitations.

In addition to these fatal hurdles, Plaintiff has failed to state even a remotely plausible claim for relief under Rule 12(b)(6). She has not alleged the required elements of her claims under New York law—including the most basic facts about when or how she supposedly entered into a contractual relationship with Defendants, what the terms of that contract included, or whether they consented to be parties to it. Delaney's bare allegation that she "was promised" a one-third share of attorneys' fees *in addition to* the compensation that Rothenberg would pay for her work—once, orally, more than eighteen years ago, with no alleged involvement of either Fay or Perles—falls far short of meeting the pleading requirements for asserting a breach of contract claim under Rule 12(b)(6).

Plaintiff's equitable claims, which are asserted only in an effort to create a remedy in the absence of an enforceable contract, are similarly deficient. None of them—unjust enrichment or quasi-contract, constructive trust, or promissory estoppel—can impose liability on Defendants as a result of Delaney's alleged personal recollection that she was promised more than she has already received for her modest contributions.

This case should be dismissed in its entirety with prejudice against all Defendants. But at an absolute minimum, Thomas Fortune Fay, Fay Law Group, P.A., Steven R. Perles, Perles Law Firm, P.C., and Fay and Perles FSIA Litigation Partnership (the "Fay and Perles Defendants") should be dismissed as Defendants in this case. Delaney's entire claim against them is premised on the proposition that they had a relationship with Rothenberg, who in turn allegedly hired Delaney, but she has not alleged one single, non-conclusory fact that plausibly supports a claim

that Fay or Perles or their organizations ever agreed to pay her anything at all—much less that they agreed to pay her one-third of the attorneys' fees that they ever recovered.[1]

## STATEMENT OF RELEVANT FACTS

For nearly twenty years, Defendants have represented victims of terrorism and their families in *Peterson*, an action brought to recover the damages they incurred in relation to the devastating 1983 attack on the U.S. Marine Barracks in Beirut, Lebanon. Compl. ¶ 14. Delaney's claim for fees is one of many that have plagued Defendants throughout the litigation, and is Delaney's second attempt to recover tens of millions of dollars for the ten months of work she allegedly contributed to the case (for which Rothenberg has already compensated her).

### *Underlying Litigation*

The *Peterson* litigation was a hard-fought battle with countless substantive and procedural challenges that Defendants had to overcome in order to prevail. It began in 2001, when over 800 plaintiffs filed a complaint against Iran and its Ministry of Intelligence and Security in the District of Columbia. Compl. ¶ 15. Numerous related actions were subsequently filed, bringing the total number of plaintiffs to over 1400. *See id.* After the Iranian defendants failed to appear, the Court entered default judgment against them in 2003. *Id.* The D.C. Court appointed special masters to conduct evidentiary hearings and determine damages for individual plaintiffs over the next four years. *Id.* ¶¶ 15, 39. In September 2007, the D.C. Court awarded damages to the plaintiffs in a judgment totaling about $2.6 billion dollars. *Id.* ¶ 40. In March 2013, after the *Peterson* plaintiffs had registered their D.C. judgments in this district, this Court determined that Iranian assets were

---

[1] Allen L. Rothenberg and the Rothenberg Law Firm, LLP (the "Rothenberg Defendants") join in this Motion and also separately move to dismiss Plaintiff's fraud claim against Rothenberg (Count XII) for failure to state a claim upon which relief may be granted.

subject to turnover to satisfy them. *See* Dkt. 870, at 26 ("Turnover Decision").[2]  The Turnover Decision was publicly docketed, and was covered by the media. *See, e.g.*, *Beirut Bombing Victims Win A Nearly $2 Billion Judgment In New York*, Reuters Gulf Fin. News (Mar. 23, 2013).

After the Supreme Court affirmed the Turnover Decision in *Bank Markazi v. Peterson*, 136 S. Ct. 1310 (2016), Iranian assets finally became available to satisfy the judgments. Compl. ¶ 17. On June 6, 2016, this Court authorized distribution of those assets to plaintiffs through a QSF. *Id.* "[A] flood of disputes" over attorneys' fees quickly arose, *id.* ¶ 50, of which this is one.

### *Delaney's Alleged Role And Claims For Fees*

Defendants have represented plaintiffs in the *Peterson* litigation for nearly twenty years. Compl. ¶ 14. Over the long course of the litigation, Defendants sometimes hired others to help them perform their tasks in the larger litigation. *See id.*; *see also* Dkt. 870, at 9-27.

Rothenberg allegedly hired Delaney in February 2001 "to find and refer . . . plaintiffs" and to "provide legal research and writing" for the *Peterson* case. Compl. ¶¶ 14-15; *see id.* ¶¶ 21-25. She did not enter a notice of appearance, was not listed as an attorney of record, and never appeared in court on behalf of or filed any documents for plaintiffs in *Peterson*. Nevertheless, Delaney alleges that she was "brought [] on board as a member of the litigation team," allegedly with Fay's and Perles's oral agreement. *Id.* ¶ 27. Delaney alleges that "[i]n exchange for her efforts, [she] was orally promised the standard and customary fee of one-third of net attorneys' fees payable to Fay, Perles and Rothenberg in [] *Peterson* and related cases." *Id.* ¶ 28.

---

[2] All docket entries cited herein are in the *Peterson* case, with the exception of the Complaint in this matter. "On a motion to dismiss, the Court may consider matters subject to judicial notice." *Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 124 n.3 (S.D.N.Y. 2012) (citation omitted). "Such matters include court filings, particularly those from related litigation," *id.* (citing *Campos v. City of N.Y.*, No. 10-cv-493-JSR, 2010 WL 3912493, at *3 (S.D.N.Y. Sept. 13, 2010)), as well as news articles, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

Delaney claims she referred 58 plaintiffs who had 101 automatically qualifying family members to Defendants between February and October 2001. Dkt. 870-10, at 5. And although she makes no mention of this in her Complaint, Delaney has previously told this Court that Rothenberg paid her $7394.15 for all of her work in 2001—$1000 per week for the first three weeks, then a reduced rate when her workload decreased thereafter. *See* Dkt. 870-34, at 2 & Ex. 1. Despite having received payment, Delaney sent an email to Rothenberg's general firm email address several years later, in 2006, stating, "I trust when the money comes in my efforts will be rewarded per our verbal agreements." Dkt. 944, at 19. She did not specify which agreements she meant, how much she expected to receive, or from whom. She received no response. *Id.*

Despite her purportedly outstanding claim to a percentage-share of attorneys' fees, Delaney did not track the progress of the litigation, and claims that she learned of the QSF distribution when she read about it in "an obscure legal publication" in May 2017. Compl. ¶ 17. Delaney then sought to intervene in *Peterson* to restrict distributions from the QSF on the basis of an attorney charging lien. *Id.* ¶¶ 18, 51. There, like here, Delaney alleged that Rothenberg, Fay, and Perles all owed her $53.4 million in attorneys' fees under the terms of an oral contract, *id.* ¶ 51, despite acknowledging that she had been paid by Rothenberg in 2001, Dkt. 870-34, at 2 & Ex. 1.

Special Master Kathleen Massey—whom the Court had appointed to evaluate the many claims for attorneys' fees from the QSF, Compl. ¶ 52—found that Delaney's motion to intervene was untimely, *id.* ¶ 54; Dkt. 870, at 64-69. In particular, she explained that "the undisputed facts demonstrate that Delaney knew or should have known of her claim for years before moving to intervene" and that "an attorney charging lien is not available to secure payment of salary or for general services rendered that did not give rise to a client's recovery." Dkt. 870, at 65, 68. This Court adopted the Special Master's report and recommendation to deny Delaney's motion to recover fees, Compl. ¶ 55; Dkt. 944, at 18-20, which has led her here, seeking them once again.

## LEGAL STANDARD

The existence of a binding contract is a question of law that may be determined at the motion to dismiss stage. *Duckett v. Williams*, 86 F. Supp. 3d 268, 272 (S.D.N.Y. 2015).[3] If a contract exists, equitable claims based on the same allegations must be dismissed as duplicative of the contract claims. *See, e.g.*, *N. Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 107 (S.D.N.Y. 2013); *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 295, 298 (S.D.N.Y. 2015). Additionally, if a contract does not exist because of the statute of frauds, those duplicative claims must also be dismissed. *Four Star Capital Corp. v. Nynex Corp.*, 183 F.R.D. 91, 103-08 (S.D.N.Y. 1997) (holding that unjust enrichment, breach of a confidential relationship, and promissory estoppel without unconscionable injury may not be alleged based on a contract barred by the statute of frauds). A complaint may not circumvent the statute of frauds by merely repleading under a barred contract as claims for equitable relief. *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 412-13 (S.D.N.Y. 2016).

Moreover, to survive a motion to dismiss, Plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In practice, this means that if "the well-pleaded facts do not permit the court to infer" that a plaintiff is plausibly entitled to relief, the complaint must be dismissed. *Iqbal*, 556 U.S. at 679.

---

[3] Plaintiff appears to assert that New York law governs her claims. *See* Compl. ¶ 60 ("[A] substantial portion of the acts giving rise to this claim occurred in . . . New York."). For purposes of this Motion, Defendants do not dispute that New York law governs Delaney's claims. "Where the parties agree that New York law controls, this is sufficient to establish choice of law." *Smith v. Mikki More, LLC*, 21 F. Supp. 3d 276, 283 & n.2 (S.D.N.Y. 2014) (citation omitted) (dismissing breach of contract claim).

I.   **Plaintiff's Claims Are Barred By The Statute Of Frauds Because The Alleged Oral Contract Continued Indefinitely Beyond One Year.**

Plaintiff's claims all fail as a matter of law because they each depend on an alleged oral contract that could not be fully performed by both parties within one year. Because, as Plaintiff concedes, Defendants' alleged obligations continued indefinitely beyond one year, *see* Compl. ¶¶ 16, 20, Plaintiff's claims are barred by New York's statute of frauds, which renders void any agreement that, "fairly and reasonably interpreted," is not capable of complete performance within one year if it is not memorialized in writing. *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 339 (S.D.N.Y. 2008) (citation omitted); *see* N.Y. Gen. Oblig. Law § 5-701(a)(1). The purpose of the requirement that contracts lasting longer than one year be reduced to writing is "to discourage perjury in the testimonial recital of events long past." *Montgomery v. Futuristic Foods, Inc.*, 411 N.Y.S.2d 371, 373 (N.Y. App. Div. 1978). As a result, in order for an oral contract to be valid, all parties must be capable of completing their contractual obligations within one year. *Almeciga*, 185 F. Supp. 3d at 410.

Oral contracts of indeterminate length by their terms cannot be performed within one year and must be memorialized in writing under New York's statute of frauds. *See Darby Trading*, 568 F. Supp. 2d at 339 (explaining that contracts that have "no possibility in fact and law of full performance within one year" must be in writing to be enforceable). For example, in *Darby Trading*, the parties allegedly entered an oral contract providing that a company would supply oils "for an undetermined number of years" to a plaintiff that promised to persuade customers to switch to that oil brand. *Id.* The court, however, held that the alleged oral agreement was void under the statute of frauds for two separate and distinct reasons. First, "Plaintiff clearly understood that this agreement would span longer than one year," since the very length of the alleged agreement was

"undetermined." *Id.* Second, the contract in fact "lasted from 1999 to the beginning of 2006." *Id.* Thus, both the length of the defendants' indefinite obligation, as well as the actual length of time that passed from agreement to completion, rendered the contract void under the statute of frauds. *Id.*; *see Holloway v. King*, 361 F. Supp. 2d 351, 356 (S.D.N.Y. 2005) (holding that oral agreement that was "silent as to [its] duration" was void under the statute of frauds because the defendant's obligation to share profits from his promotion of boxing matches "would continue indefinitely").

Both considerations apply with equal force to invalidate the alleged oral agreement in this case. Plaintiff's own allegations demonstrate that she understood the purported contract to require Defendants' performance to extend indefinitely beyond one year. She alleges that the contract was formed on some (unspecified) date in 2001 but "her payment was not due in 2001." Compl. ¶ 16. "Instead, [her] payment was due under the agreement when and to the extent that the judgment was collected upon." *Id.* Plaintiff understood that "the prospects for recovery upon judgments entered in [the *Peterson*] cases [were] *extremely remote*." *Id.* (citation omitted; emphasis added). She further understood that she "would only be paid if and when the defendants themselves received their attorney's fees (*which may have been never*)." *Id.* ¶ 20 (emphasis added). And, Plaintiff knew that Defendants anticipated spending at least ten months tracking down hundreds of plaintiffs and preparing the *Peterson* complaint, *id.* ¶ 15—leaving no realistic possibility for the case to be resolved in favor of the plaintiffs, the judgment to be collected upon, and attorneys' fees to be distributed all within one year. In other words, Plaintiff expected from the outset that she would be paid, if ever, after much more than one year had passed.

Plaintiff also concedes that the long and laborious process of collection in *Peterson* in fact made Defendants' performance of the alleged contract within one year impossible. *See* Compl. ¶¶ 15-17, 20. Indeed, Plaintiff asserts that "[t]he first date that the contract was capable of being performed was the first date that Trustee [Stanley] Sporkin was authorized to distribute funds"

from the QSF. *Id.* ¶ 57; *see also id.* ¶ 43. That date—June 6, 2016—was about *fifteen years* after the oral contract was allegedly formed. *Id.* ¶ 17. And Plaintiff did not "demand[] payment of her share" until May 2017, after she allegedly happened to read about the partial distribution of funds in the QSF in an "obscure" publication—no less than *sixteen years* after the formation of the alleged contract. *Id.* ¶¶ 17, 48.

Plaintiff's own allegations thus make clear that any alleged "contract" to pay her a portion of the attorneys' fees that may have been recoverable in *Peterson* could not "fairly and reasonably" be interpreted to contemplate full performance within one year. Any agreement Delaney had with Rothenberg regarding the *Peterson* attorneys' fees thus could be enforceable only if it were in writing. *Darby Trading*, 568 F. Supp. 2d at 339. But Plaintiff acknowledges, as she must, that there was never any written agreement between them, and that the "contract" she is seeking to enforce was at *most* an oral agreement, unsupported by any contemporaneous writing or records. *See, e.g.*, Compl. ¶¶ 1, 27, 28, 30, 32, 33, 48, 49, 51. To avoid exactly this risk of "perjury in the testimonial recital of events long past," the statute of frauds voids Delaney's alleged contract and bars her claims of breach of contract. *Montgomery*, 411 N.Y.S.2d at 373.

Plaintiff's related claims for unjust enrichment, constructive trust, and promissory estoppel—all of which rest on the unenforceable oral "contract" and repeat the same allegations—must also be dismissed. *Four Star Capital Corp.*, 183 F.R.D. at 103-08. Plaintiff may not end run the statute of frauds by repleading a barred breach of contract claim under a different name. *Almeciga*, 185 F. Supp. 3d at 412-13.

## II. Plaintiff's Claims Are Barred By The Statute Of Limitations Because They Accrued Over Six Years Ago.

Even if Plaintiff's claims were not foreclosed by the statute of frauds, they would still be barred as untimely. Under New York's statute of limitations, Plaintiff's contractual and equitable

claims should have been commenced within six years. N.Y. C.P.L.R. 213(1)-(2).

Plaintiff's claims for breach of contract (and her related equitable claims) accrued well over six years ago. *Elie Int'l, Inc. v. Macy's W. Inc.*, 965 N.Y.S.2d 52, 53 (N.Y. App. Div. 2013).[4] Contract claims accrue "when the plaintiff had the right to demand payment." *Id.*[5] That rule applies even if the amount owed is uncertain or contingent on an unfulfilled event. *See id.* (explaining that a condition of payment "does not affect the accrual date of the breach" and that whether the amount owed was not apparent until years later is "immaterial" because breach does not depend on party's knowledge of injury).

Delaney could have demanded payment in September 2007 when the Court awarded damages to the *Peterson* plaintiffs following evidentiary hearings about their individual recovery. Compl. ¶¶ 39-40. Although the money had not yet reached the Defendants' hands, according to Delaney's own claims, her alleged legal right to attorneys' fees existed even then, when the *Peterson* plaintiffs successfully recovered damages. *See id.* ¶ 34. Delaney certainly could have asserted her alleged right to payment in March 2013 when the Court granted plaintiffs' motion for turnover of Iranian assets.

Plaintiff's claims alleging a breach of a constructive trust accrued even earlier. A constructive trust action "accrues when the party seeking to impose the trust knows or should have

---

[4] *See also Williams-Guillaume v. Bank of Am., N.A.*, 14 N.Y.S.3d 466, 469 (N.Y. App. Div. 2015) (unjust enrichment); *Huang v. Siam Commercial Bank Pub. Co.*, 247 F. App'x 299, 301 n.2 (2d Cir. 2007) (promissory estoppel); *Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 615 (S.D.N.Y. 2010) (quasi-contract).

[5] Plaintiff attempts to extend the first date that the alleged contract was capable of being performed to June 2016 in order to avoid her claims being time-barred, *see* Compl. ¶ 57, but that is in tension with her argument that the alleged contract could have been performed within a year. Delaney cannot have it both ways. Either she was unable to demand performance within one year, rendering her contract void under the statute of frauds, or she could have demanded it then (or within the next twelve years) and her contract claim would be barred under the statute of limitations.

known of the wrongful withholding." *Two Clinton Square Corp. v. Friedler*, 459 N.Y.S.2d 179, 181 (N.Y. App. Div. 1983). In other words, Delaney is held to the same standard of actual or constructive notice that determined the timeliness of her motion to intervene in *Peterson*. Dkt. 944, at 10, 18 (considering "the length of time the applicant knew or should have known of its interest before making the motion" for timeliness of intervention (citation omitted)).

As this Court acknowledged in denying Plaintiff's previous motion, several events put Plaintiff on notice of her purported constructive trust claims. In particular, the Court emphasized that Delaney could have brought a claim for the attorneys' fees as early as 2006—thirteen years ago. Dkt. 944, at 19. The Court explained that it was "undisputed" that Delaney sent Rothenberg an email in December 2006 stating, "I trust when the money comes in my efforts will be rewarded per our verbal agreements." *Id*. But the Court found "there is no evidence whatsoever that Rothenberg responded to confirm his agreement, and therefore Delaney should have known that her claim was in jeopardy <u>at that moment</u>." *Id*. Even if payment was not an option in 2006, the Court found there was a "realistic possibility of compensation"—and thus a cause of action—when the Court issued its Turnover Decision in 2013 "<u>at the latest</u>." *Id*. at 20. Plaintiff's cause of action, if any, should have accrued at least by that date.

There is no question that Plaintiff could have been aware of her claims as a result of these developments. Although she alleges that she only read about the QSF distributions in an obscure legal publication in May 2017, the *Peterson* docket is publicly available. Moreover, the *Peterson* proceedings, and particularly the award of damages, have received widespread attention in both the legal and non-legal press. *See, e.g.*, Dkt. 870-34, at 13 (Delaney forwarding Yahoo! News article entitled "Judge: Iran owes $254M in terror attack" in December 2006); Glenn Kessler, *Iran Must Pay $2.6 Billion for '83 Attack*, Wash. Post (Sept. 8, 2007); Daniel Wilson, *Victims of '83 Iran-Backed Attack Want $2.7B from HSBC*, Law360 (Jan. 28, 2013), https://www.law360.com/

articles/410610/victims-of-83-iran-backed-attack-want-2-7b-from-hsbc.    As a result, even if Delaney did not in fact know of her claims, she certainly could have and should have asserted them no later than March 2013.  New York's statute of limitations thus bars Plaintiff's claims.

## III.    Plaintiff Has Failed To State A Claim Under Rule 12(b)(6) Because She Has Failed To Make Any Specific Allegations That Plausibly Entitle Her To Relief.

Plaintiff's claims also require dismissal as a matter of law because they do not state any plausible claim to relief.  Plaintiff fails to plead facts to satisfy the required elements of each of her claims under New York law, leaving only "labels and conclusions" that cannot survive a motion to dismiss.  *Twombly*, 550 U.S. at 555.

### A. Plaintiff Has Not Stated A Claim For Breach Of Contract (Counts I-VIII) Because She Has Not Plausibly Alleged That A Contract Existed.

Plaintiff's breach of contract claims fail at the threshold.  Under New York law, to state a claim for breach of contract, a plaintiff must plausibly allege: (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach of the contract, and (4) damages to plaintiff as a result of that breach.  *Prestige Brands Inc. v. Guardian Drug Co.*, 951 F. Supp. 2d 441, 446 (S.D.N.Y. 2013).  For the contract to be valid, the parties must express their mutual consent to be bound.  *Id.*  And without a "meeting of the minds on all essential terms, there is no contract."  *Duckett*, 86 F. Supp. 3d at 272 (citation omitted).  Plaintiff's contract claims must be dismissed because she fails to plausibly allege that the oral contract existed, that it reflected a meeting of the minds, or that the Fay and Perles Defendants consented to be bound by it.

Plaintiff fails to allege the most basic facts surrounding the formation of the alleged oral contract.  She does not allege when or where the contract was formed, who negotiated the terms, or what the terms beyond payment included.  Instead, she merely alleges that in February 2001, she met with Rothenberg and he engaged her to identify plaintiffs for the *Peterson* case.  Compl.

¶¶ 21-25.  Then, at some point in March 2001, she alleges that she "was orally promised . . . one-third of net attorneys' fees payable to Fay, Perles and Rothenberg in [] *Peterson* and related cases" for continuing this work.  *Id.* ¶¶ 27-29.  These barebones allegations do not pass muster under Rule 12(b)(6).  *See Prestige Brands Inc.*, 951 F. Supp. 2d at 446 (dismissing breach of contract claim because Plaintiff "failed to identify (1) the individuals who negotiated and entered into the agreement; (2) the specific terms of the agreement; or (3) when and where the agreement was made"); *Integra FX3X Fund, L.P. v. Deutsche Bank, AG*, No. 14-cv-8400-JPO, 2016 WL 7009057, at *3 (S.D.N.Y. Nov. 29, 2016) (dismissing breach of contract claim because plaintiff "fails to allege the date on which the alleged oral contract was entered into and fails to provide any detail about the nature of the exchanged promises or consideration").

Moreover, Plaintiff has not alleged "the fundamental basis" of any contract: a meeting of the minds.  *Duckett*, 86 F. Supp. 3d at 272 (citation omitted).  With respect to Rothenberg, Delaney does not plausibly allege that he agreed to pay her one-third of the fees payable to him in *Peterson* and related cases for work that he previously hired her to do for a flat weekly rate.  Dkt. 870-34, at 2 & Ex. 1; *see Duckett*, 86 F. Supp. 3d at 274 (dismissing breach of contract claim where "Plaintiff's contention that [football player] must pay him one-third of the total proceeds of [the player's] NFL contracts" was "absurd" and would "require[] a near total abandonment of reason").  Nor does Delaney allege that Fay or Perles ever agreed to the essential term of paying her one-third of the fees they earned or offer any facts to support her conclusory allegation that they were parties to the contract.  *See* Compl. ¶¶ 27-28 (not specifying who made alleged oral promise); *id.* ¶ 14 (asserting that *Rothenberg* "engaged Delaney . . . to work as co-counsel on the *Peterson* case on a contingency fee basis with the permission of both Fay and Perles").  It is implausible that these alleged terms could have reflected a meeting of the minds with Fay and Perles.

Finally, Plaintiff has also failed to allege any facts showing that Fay or Perles consented to the agreement or that Fay Law Group, Perles Law Firm, or Fay and Perles FSIA Litigation Partnership were otherwise bound by the agreement. Plaintiff's allegations about Rothenberg's role in the contract—a mutual friend introduced them, they discussed the *Peterson* proceedings in person and on the phone, and he hired her as a member of the litigation team—are not connected to any factual allegations about Fay or Perles. *See* Compl. ¶¶ 21-29. For example, Plaintiff does not allege that Rothenberg was authorized to act as an agent for Fay or Perles when he decided to hire her. Nor does Plaintiff allege that she ever spoke to Fay or Perles between 2001 and 2016. Her only reference to any contact with Fay or Perles was the Court-convened conference call in June 2017 about her prior attempt to recover attorneys' fees in *Peterson*. *Id.* ¶ 19. Without substantially more specificity to render her claims at all plausible, her contract claims must be dismissed.

### B. Plaintiff's Unjust Enrichment And Quasi-Contract Claims (Count IX, XI) Impermissibly Duplicate Her Barred Breach Of Contract Claim.

"The theory of unjust enrichment lies as a quasi-contract claim" in New York because "[i]t is an obligation the law creates in the absence of any agreement." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014) (citations omitted). To state a claim of unjust enrichment, Plaintiff must allege that Defendants were enriched at Plaintiff's expense and that equity and good conscience require restitution. *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001).

Although a plaintiff may plead unjust enrichment and breach of contract in the alternative when there is a dispute about the existence of a contract, "there are exceptions, and this case involves one of them: A party may not circumvent the Statute of Frauds by repleading an already barred breach of contract claim as a claim for unjust enrichment." *Almeciga*, 185 F. Supp. 3d at

412-13 (internal quotation marks and citations omitted).  Plaintiff has offered no other basis than the oral contract for her alleged right to one-third of the attorneys' fees.  She therefore cannot state a claim for unjust enrichment in light of an alleged contract that is void and unenforceable.  *Id.*

Even if the oral contract were enforceable, Plaintiff's claims for unjust enrichment and quasi-contract should still be dismissed because they would be duplicative of her breach of contract claims.  *Diversified Grp., Inc. v. Daugerdas*, 139 F. Supp. 2d 445, 460-61 (S.D.N.Y. 2001); *Bettan v. Geico Gen. Ins. Co.*, 745 N.Y.S.2d 545, 546 (N.Y. App. Div. 2002).  The claims all seek $53.4 million in damages and rest on the same allegations: that Defendants owe her one-third of all attorneys' fees collected in exchange for her research identifying plaintiffs for *Peterson*.  Plaintiff has alleged "no wrong independent of the contract claim" to withstand dismissal.  *Walter H. Poppe Gen. Contracting, Inc. v. Town of Ramapo*, 721 N.Y.S.2d 248, 249 (N.Y. App. Div. 2001).

Thus, Plaintiff is in a "catch 22" with her Complaint.  *See Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004).  If a valid, enforceable contract did not exist, Plaintiff has no interest in the fees in *Peterson* that she claims unjustly enriched Defendants at her expense.  *See id.*  But if a valid, enforceable contract did exist, Plaintiff cannot recover under her duplicative quasi-contract or unjust enrichment claims.  *See id.*  Either way, her unjust enrichment and quasi-contract claims must be dismissed.

### C. Plaintiff's Constructive Trust Claim (Counts X and XI) Fails Because She Has Not Plausibly Alleged A Fiduciary Relationship With Defendants Or A Transfer.

Plaintiff also fails to a state a claim of constructive trust.  Under New York law, a claim of constructive trust is only appropriate when there is clear and convincing evidence of: (1) a confidential or fiduciary relationship, (2) an express or implied promise, (3) a transfer in reliance on the promise, and (4) unjust enrichment.  *Atateks Foreign Trade Ltd. v. Dente*, 798 F. Supp. 2d 506, 507 (S.D.N.Y. 2011).

Plaintiff has not alleged any facts showing the existence of a confidential or fiduciary relationship with the Defendants. She did not have a fiduciary relationship with Rothenberg because, at most, she alleges an ordinary employment relationship. *See Farrell v. Comstock Grp., Inc.*, 621 N.Y.S.2d 325, 326 (N.Y. App. Div. 1995); *Waldman v. Englishtown Sportswear, Ltd.*, 460 N.Y.S.2d 552, 556 (N.Y. App. Div. 1983). "The mere fact that defendant . . . may owe money to plaintiff for compensation under the agreement of employment, does not make that defendant a fiduciary." *Waldman*, 460 N.Y.S.2d at 556. New York law is clear that, "when parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002) (citation omitted). Plaintiff offers even less of a basis for a fiduciary relationship with the Fay and Perles Defendants: she does not allege *any* contact with them at all prior to the June 2017 conference call in *Peterson*. Her failure to allege a relationship beyond an employment agreement with Rothenberg, or at least a reason to dispense with the requirement, alone defeats her claim for a constructive trust. *Atateks*, 798 F. Supp. 2d at 507-08; *Waldman*, 460 N.Y.S.2d at 556.

Plaintiff also cannot demonstrate—as she must—that *she* made any transfer to Defendants in reliance on the oral contract. *See Weber v. Multimedia Entm't, Inc.*, No. 97-cv-0682-PKL, 1998 WL 2550, at *5 (S.D.N.Y. Jan. 5, 1998) (dismissing constructive trust claim because "plaintiffs have not alleged the transfer of any property from plaintiffs to defendants"). Plaintiff instead alleges only a transfer from *the Court* to Defendants: "A transfer of monies occurred at the time the defendants were paid legal fees from the QSF . . . , a portion of which were owed to plaintiff for the legal services she performed." Compl. ¶ 135. Plaintiff was not in possession of that money to be able to transfer it to Defendants and create a constructive trust for its return. Her claims of constructive trust are baseless and should be dismissed.

**D. Plaintiff Has Not Stated A Claim Of Promissory Estoppel (Count XIII) Because She Cannot Show A Clear Promise, Reliance, Or Any Unconscionable Injury.**

To state a claim of promissory estoppel under New York law, Plaintiff must allege: (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance on the promise, and (3) injury by reason of the reliance. *Darby Trading*, 568 F. Supp. 2d at 341. In order to circumvent the statute of frauds with promissory estoppel, Plaintiff must allege that her injury rises to the level of being "unconscionable." *Id.* Plaintiff fails to satisfy any of these requirements.

Plaintiff does not adequately plead the existence of any clear and unambiguous promise. Indeed, she admits the alleged promise was never definite—there were conditions beyond Defendants' control that would have to be satisfied before any payment was possible. *See Chem. Bank v. City of Jamestown*, 122 A.D.2d 530, 531 (N.Y. App. Div. 1986) (dismissing promissory estoppel claim "since it was made clear to plaintiff that there were conditions yet to be met before the [promised] loan . . . would be finalized" that were "not within defendants' power to ensure, as plaintiff well knew"). As Plaintiff alleges, she "would only be paid if and when the defendants themselves received their attorney's fees (which may have been never)." Compl. ¶ 20.

Plaintiff also has not alleged a single fact to show she relied on the alleged promise. She asserts only that her reliance was "implicit in the work she performed," Compl. ¶ 184, but she was paid over $7000 for that work. *See* Dkt. 870-34, at 2 & Ex. 1. Nor would any reliance be reasonable. *See, e.g.*, *Johnson & Johnson v. Am. Nat'l Red Cross*, 528 F. Supp. 2d 462, 464 (S.D.N.Y. 2008). The notion that a new attorney who spent about ten months doing online research would be immediately guaranteed a share of attorneys' fees equal to (or greater than) partners who spent nearly twenty years litigating the *Peterson* proceedings is so implausible as to preclude any reliance.

Plaintiff likewise fails to plead any injury, much less one that was unconscionable. "[T]he mere failure to obtain an uncertain prospective benefit does not rise to a sufficient level of unconscionability to warrant the application of the doctrine of promissory estoppel." *Country-Wide Leasing Corp. v. Subaru of Am., Inc.*, 520 N.Y.S.2d 24, 25 (N.Y. App. Div. 1987). Instead, Plaintiff "must demonstrate injuries beyond those that flow naturally from the defendant's non-performance or from the plaintiff's continuing performance of the unenforceable agreement." *Darby*, 568 F. Supp. 2d at 341 (citations omitted); *see Philo Smith & Co. v. USLIFE Corp.*, 554 F.2d 34, 36 (2d Cir. 1977) (per curiam) (holding that the loss of payment pursuant to a finder's fee agreement that was barred by the statute of frauds is hardly "the sort of irremediable change in position normally associated with the doctrine of promissory estoppel" and not unconscionable injury). Plaintiff has not done so here. She alleges only "lost fees," which is "consistently rejected" as an unconscionable injury. *Darby*, 568 F. Supp. 2d at 341 (citations omitted). Plaintiff thus fails to state a claim for promissory estoppel.

## IV. The Fay And Perles Defendants Have Zero Relationship To Plaintiff And Should Not Be Parties To This Suit.

Plaintiff's thirty-two page Complaint has all of three sentences attempting to connect Fay and Perles to her claims. The first is the vague assertion that "in early 2001, Rothenberg engaged Delaney . . . to work as co-counsel on the *Peterson* case on a contingency fee basis with permission of both Fay and Perles." Compl. ¶ 14. Delaney provides no supporting allegations regarding when, where, or how Fay and Perles gave Rothenberg "permission" to hire her, how she knew that Fay and Perles had given Rothenberg "permission," or what fees she would receive and when.

The second is the conclusory allegation that "Rothenberg[,] Fay and Perles[] orally agreed that [Delaney] would be treated as a member of the litigation team." Compl. ¶ 27. Again, Delaney does not support this assertion with basic facts, including when they reached that agreement, where

they reached that agreement, who said what, how long they would consider her a team member, or what anyone understood that term to mean.

The third is, "In exchange for her efforts, Delaney was orally promised the standard and customary fee of one-third of net attorneys' fees payable to Fay, Perles and Rothenberg in [] *Peterson* and related cases." Compl. ¶ 28. Here, Delaney's use of the passive voice obscures *who* made that promise, again raising several unanswered questions. When, where, and why did Fay and Perles agree to that arrangement? Who decided what "standard and customary" means? What were the related cases, and were Fay, Perles, and Rothenberg all involved in those? Delaney leaves out any such details sufficient to infer that Fay and Perles were involved in the alleged oral contract. *See Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312-13 (S.D.N.Y. 2014).

Plaintiff offers even less support for including Fay's and Perles's respective organizations in this case. She includes not a single allegation whatsoever tying Fay and Perles FSIA Litigation Partnership to her claims. Her vague, conclusory allegation that she "was assured repeatedly" that the Partnership would pay her a share of the fees collected from the QSF, Compl. ¶ 120, without any allegations regarding who assured her, when and where they did so, and what was said, cannot plausibly support a claim against the Partnership. Nor is there a plausible allegation at all that Fay Law Group and Perles Law Firm entered into Plaintiff's alleged oral contract.

Plaintiff also asserts that the Fay and Perles FSIA Litigation Partnership "has been dissolved and no longer exists," Compl. ¶ 14; that Fay Law Group and Perles Law Firm are "successor[s] to and . . . responsible for debts incurred by Fay & Perles," *id.* ¶¶ 6, 9; that Fay is the principal of and a shareholder in Fay Law Group, *id.* ¶¶ 7, 79; and that Perles is the principal of and a shareholder in Perles Law Firm, *id.* ¶¶ 10, 95. First, as a factual matter, the Partnership still exists. But even if it did not, Plaintiff has not plausibly alleged that Fay Law Group and Perles Law Firm are its successors in interest. "The general common-law rule" for successor liability is

that a purchaser of assets is not responsible for the seller's debts and liabilities. *Cargo Partner AG v. Albatrans Inc.*, 207 F. Supp. 2d 86, 93 (S.D.N.Y. 2002). Plaintiff has not alleged any facts to show that one of the four exceptions to establish successor liability applies here: that there was an agreement to assume the Partnership's obligations, a consolidation or merger between the organizations, a continuation of their identities, or a fraudulent attempt to escape liability. *Id.* at 93-94. In fact, she appears to allege the opposite in stating that Fay and Perles "each ha[ve] returned to practicing independently with their own namesake law firms" after disagreements and dissolution of the Partnership. Compl. ¶ 14.

Another court recently found similar allegations insufficient to sustain any claim against Fay Law Group in yet another attempt to secure attorneys' fees from *Peterson*. *See Glenn v. Fay*, 281 F. Supp. 3d 130, 141-43 (D.D.C. 2017) (dismissing all claims against Fay Law Group with prejudice and dismissing Fay Law Group from the case because the mere allegation that Fay is a principal of Fay Law Group does not state a plausible claim that Fay Law Group is a successor in interest to the Partnership). This Court should find the same here and, at a minimum, dismiss the Fay and Perles Defendants from the case.

## CONCLUSION

For the foregoing reasons, and the reasons identified in the Rothenberg Defendants' Motion, the Court should dismiss Plaintiff's Complaint in its entirety with prejudice. At the very least, the Court should dismiss all claims against the Fay and Perles Defendants in this case.

Dated: July 12, 2019

Respectfully submitted,

/s/ Caroline A. Morgan

Peter C. Buckley, NY Bar No. 4825485,
*admission pending*
Caroline A. Morgan, NY Bar No. 4609012
FOX ROTHSCHILD, LLP
101 Park Avenue, Suite 1700
New York, NY 10178
Telephone: 212-878-7900
Facsimile: 212-692-0940
pbuckley@foxrothschild.com
cmorgan@foxrothschild.com

*Counsel for Allen L. Rothenberg and the
Rothenberg Law Firm, LLP*

/s/ Douglas M. Bregman

Douglas M. Bregman, *admitted pro hac vice*
Geoffrey T. Hervey, *admitted pro hac vice*
BREGMAN, BERBERT, SCHWARTZ &
GILDAY, LLC
7315 Wisconsin Avenue, Suite 800 West
Bethesda, MD 20814
Telephone: 301-656-2707
Facsimile: 301-961-6525
dbregman@bregmanlaw.com
ghervey@bregmanlaw.com

*Counsel for Steven R. Perles, Perles Law Firm,
P.C., and Fay and Perles FSIA Litigation
Partnership*

/s/ Matthew D. McGill

Matthew D. McGill, NY Bar No. 3960770
Chantale Fiebig, NY Bar No. 4498135
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: 202-955-8500
Facsimile: 202-467-0539
mmcgill@gibsondunn.com
cfiebig@gibsondunn.com

*Counsel for Thomas Fortune Fay, Fay Law
Group, P.A., and Fay and Perles FSIA
Litigation Partnership*

**CERTIFICATE OF SERVICE**

I certify that on the 12th day of July, 2019, I caused a copy of the foregoing document to be served electronically on all counsel of record via operation of the Court's CM/ECF system.

By: /s/ Matthew D. McGill
Matthew D. McGill (mmcgill@gibsondunn.com)