UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



COLLEEN M. DELANEY,

    Plaintiff,

-against-

THOMAS FORTUNE FAY et al.

    Defendants.

No. 19 Civ. 4085 (LAP)

LORETTA A. PRESKA, Senior United States District Judge:

    Plaintiff Colleen M. Delaney, an attorney, brings this action to enforce an alleged oral agreement entitling her to a one third contingency fee in what turned out to be a successful billion-dollar litigation. (Complaint, dated May 8, 2019 ("Compl.") [dkt. no. 3].) Defendants Thomas Fortune Fay, Fay Law Group, P.A., Steven R. Perles, Perles Law Firm, P.C., Allen L. Rothenberg, The Rothenberg Law Firm, LLP, and Fay and Perles FSIA Litigation Partnership -- the lawyers and law firms who allegedly repudiated their fee payment obligations to Delaney -- have moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (See Notice of Motion, dated July 12, 2019 [dkt. no. 26].) As explained below, Defendants' motion to dismiss is GRANTED.

1

## I. Background[1]

For nearly twenty years, Defendants Fay, Perles, and Rothenberg have served a plaintiffs' counsel in <u>Peterson v. Islamic Republic of Iran</u>, No. 10 Civ. 04518 (S.D.N.Y.), a case brought against the Iranian government by victims of the 1983 attack on the U.S. Marine Barracks in Lebanon. (Compl. ¶ 14.)

Delaney became involved in <u>Peterson</u> when it was still in gestation. In 2001, she met Rothenberg, who said he was investigating a case involving the 1983 terrorist attack and needed someone, like Delaney, with solid public relations and research skills. (<u>Id.</u> ¶ 21.) A key challenge for Defendants at this point in the case was finding potential plaintiffs, as there was no centralized list of victims from the attack. (<u>Id.</u> ¶¶ 23-24.) Indeed, when Rothenberg first met Delaney, he told her that Defendants did not yet have a single client. (<u>Id.</u> ¶ 24.) Given Delaney's experience in internet data mining, she was uniquely qualified to help Defendants locate possible plaintiffs and was retained for that purpose. (<u>Id.</u> ¶¶ 15, 25.)

By early 2001, Rothenberg had grown so impressed with Delaney's work that he, Fay, and Perles agreed to bring her on as a member of the litigation team. (<u>Id.</u> ¶ 27.) Defendants orally promised Delaney that in exchange for her efforts, she

---

[1] The following facts are taken from the Complaint and assumed to be true for purposes of deciding Defendants' motion.

2

would receive one third of the net attorneys' fees payable to Defendants in Peterson and related cases. (Id. ¶ 28.) The parties never put this agreement into writing, but Defendants assured Delaney that they would keep their word. (Id. ¶ 32.)

For approximately ten months beginning in March 2001, Delaney ran an intensive outreach campaign to locate victims and retain them as clients. (Id. ¶ 29.) As a result of her efforts, Defendants eventually signed up 1400 clients under contingent fee arrangements entitling Defendants to one third of any recovery. (Id. ¶ 34.) In late 2001, Defendants filed the Peterson actions on behalf of hundreds of plaintiffs, the majority of whom were located by Delaney. (Id. ¶¶ 15, 36.)

Delaney stopped working on Peterson around the time it was filed, but Defendants continued litigating and ultimately won a massive judgment totaling roughly $2.6 billion and an order from this Court authorizing the distribution of Iranian assets to plaintiffs through a Qualified Settlement Fund ("QSF"). (Id. ¶¶ 20, 37-46.) In early 2018, Defendants collected over $150 million in attorneys' fees through the QSF. (Id. ¶ 47.)

After Delaney caught wind of the QSF fee payments, she demanded her share from Defendants, but they refused. (Id. ¶¶ 48-49.) Delaney then moved to intervene in ongoing proceedings in this Court regarding payments from the QSF, claiming that she had a lien on the legal fees paid to

3

Defendants. (Id. ¶ 51.) The Court denied Delaney's motion as untimely and on grounds that she was not entitled to a lien under the governing law. (Id. ¶¶ 42-55.) Following that setback, on May 8, 2019, Delaney initiated this lawsuit, asserting claims against Rothenberg for fraud and against all Defendants for breach of contract, promissory estoppel, unjust enrichment, constructive trust, and quasi contract. (Id. ¶¶ 63-188.) Delaney seeks $53.4 million in damages. (Id. at 51.)

## II. Legal Standard

On a Rule 12(b)(6) motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). To survive dismissal, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). Put differently, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557 (internal quotation marks omitted).

## III. Discussion

### a. Breach of Contract

Defendants argue that New York's Statute of Frauds bars Delaney's breach of contract claims. Under the Statute of Frauds, a contract that "[b]y its terms is not to be performed within one year from the making thereof" is unenforceable unless memorialized in writing. N.Y. Gen. Oblig. Law § 5-701(a)(1); see also Multi-Juice, S.A. v. Snapple Beverage Corp., No. 02 Civ. 4635, 2006 WL 1519981, at *10 (S.D.N.Y. June 1, 2006) ("[T]he Statute of Frauds forbids the imposition of a performance obligation on a defendant necessarily extending beyond one year, in the absence of a writing(s) which sets forth all of the essential terms of the agreement imposing that performance obligation." (quoting City of Yonkers v. Otis Elevator Co., 649 F. Supp. 716, 727 (S.D.N.Y. 1986)).

Courts have construed the Statute of Fraud's one-year-performance provision as covering "only those contracts which, by their terms, have absolutely no possibility in fact and law of full performance within one year." Guilbert v. Gardner, 480 F.3d 140, 151 (2d Cir. 2007) (quoting Cron v. Hargro Fabrics, Inc., 91 N.Y.2d 362, 366 (1998)). "If an agreement may be fairly and reasonably interpreted to permit performance within a year, the Statute of Frauds will not bar a breach of contract

action no matter how improbable it may be that performance will actually occur within that time frame." Id.

Defendants argue that Delaney's alleged oral contract for attorneys' fees is void under the Statute of Frauds because it had no defined term, and Delaney understood there was no realistic possibility that the Peterson cases could be resolved, the judgment collected upon, and attorneys' fees awarded in under one year. (Defendants' Memorandum of Law, dated July 12, 2019 ("Def. Br.") [dkt. no. 27] at 8.) Delaney responds that "[i]t is immaterial that so complex a litigation was not expected to conclude within one year" and that what matters is that the contract did not "require[] performance [to] continue beyond one year." (Plaintiff's Memorandum of Law, dated Aug. 16, 2019 ("Opp.") [dkt. no. 31] at 10.)

The Court concludes that the alleged agreement is void under the Statute of Frauds. This case is closely analogous to Holloway v. King, 361 F. Supp. 2d 351 (S.D.N.Y. 2005), where former managers of the famed boxer Mike Tyson sued his promoter, Don King, for breach of an alleged oral agreement that King would remit to Tyson and the managers 70% of all King's earnings from promoting Tyson's boxing matches. The court noted that "[t]here was no time limit to these alleged obligations" such that "[e]ven if all of Tyson's fights occurred within the one-year period following the making of the [oral agreement], King's

6

alleged obligations to share seventy percent of his promotion earnings with Tyson and the plaintiffs would continue indefinitely." Id. at 356. Because King's payment obligations necessarily extended beyond one year, the court concluded that the agreement fell within the Statute of Frauds. Id. at 356-57.

The same is true with respect to the oral agreement alleged here. Delaney does not plead that there was any temporal restriction on Defendants' obligation to pay her a portion of the fees they earned on the Peterson cases. (See, e.g., Compl. ¶ 28 ("In exchange for her efforts, Delaney was orally promised the standard and customary fee of one-third of net attorneys' fees payable to Fay, Perles and Rothenberg in the Peterson and related cases.").) Even if some miracle came to pass and the Iranian government paid a judgment in all of the Peterson cases within one year of Delaney's engagement, that would still not have terminated Defendants' obligations under the alleged agreement. As in Holloway, Defendants would continue to be required contractually to pay Delaney one third of any fees that might materialize down the road. For example, if in yet another miracle years after the Peterson judgments were paid, a court reopened the judgment and issued an additur order increasing the damages owed to the Peterson plaintiffs, the terms of the oral agreement would require Defendants to pay Delaney one third of their associated fees. The same would be true if, to give one

7

more hypothetical, the United States Congress passed a law with retroactive effect entitling the Peterson plaintiffs to enhanced damages on their earlier recovery.[2]

Although the above scenarios are all highly unlikely, they show, as a logical matter, that Defendants could not discharge within one year their contractual obligation to make payments to Delaney on fees obtained from the Peterson cases. Those obligations continued indefinitely. For that reason, the oral agreement is void under the State of Frauds. See Darby Trading Inc. v. Shell Int'l Trading & Shipping Co. Ltd., 568 F. Supp. 2d 329, 339 (S.D.N.Y. 2008) ("In determining whether a contract is capable of performance within a year for Statute of Frauds purposes, the endurance of defendant's liability is the deciding factor." (citation, internal quotation marks, and alterations omitted)); Borsack v. Chalk & Vermlion Fine Arts, Ltd., 974 F. Supp. 293, 298 n.3 (S.D.N.Y. 1997) ("Where an alleged contract, as here, is indefinite as to duration and does not, by its terms, permit the defendant to discharge its performance obligations in less than one year, the statute requires a

---

[2] The Court notes, in this regard, Delaney's allegation that some of the Peterson plaintiffs initially had their claims dismissed because their domicile jurisdictions did not recognize claims for intentional infliction of emotional distress, but that "these plaintiffs were eventually allowed to renew their claims under an act of Congress." (Compl. ¶ 41 n.3.)

8

writing setting forth the essential terms of the agreement.").
Delaney's breach of contract claims are therefore dismissed.

### b. Unjust Enrichment, Quasi Contract, and Constructive Trust

Delaney pleads claims for unjust enrichment, quasi contract, and a constructive trust based on Defendants' failure to pay her one third of the fees obtained in connection with the Peterson cases. (Compl. ¶¶ 126-57.) Because the Statute of Frauds voids the alleged oral agreement underlying these claims, they fail, as well. See Optionality Consulting Pte. Ltd. v. Nekos, 18 Civ. 5393 (ALC), 2019 WL 4523469, at *7 (S.D.N.Y. Sept. 18, 2019) (dismissing equitable and quasi-contract claims because oral agreement fell within the Statute of Frauds); Schmidt v. Maiorino, 619 N.Y.S.2d 139, 140 (N.Y. App. Div. 2d Dep't 1994) ("To the extent that the plaintiff seeks a constructive trust over future percentage bonuses allegedly orally promised by [defendant] . . . , her claim is at most a breach of an oral agreement which cannot be performed within one year, the enforcement of which is barred by the Statute of Frauds." (citations omitted)). Holding otherwise would give plaintiffs an easy "end-run around the statute of frauds." Almeciga v. Ctr. For Investigative Reporting, Inc., 185 F. Supp. 3d 401, 413 (S.D.N.Y. 2016) (quoting Komolov v. Segal, 40 Misc.3d 1228(A), 2013 WL 4411232, at *3 (N.Y. Sup. Ct. Aug. 14,

2013)). The unjust enrichment, quasi contract, and constructive trust claims are therefore dismissed.

c. Promissory Estoppel

Delaney's promissory estoppel claim founders for similar reasons. "In New York, promissory estoppel has three elements: a clear and unambiguous promise; a reasonable and foreseeable reliance . . . ; and an injury sustained by the party asserting the estoppel by reason of the reliance." Cyberchron Corp. v. Calldata Sys. Dev., Inc., 47 F.3d 39, 44 (2d Cir. 1995) (quoting Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 73 (2d Cir. 1989)). Where the Statute of Frauds voids a contract, "New York law adds a heightened injury element requiring plaintiff to demonstrate 'unconscionable' injury." Aleem v. Experience Hendrix, L.L.C., No. 16 Civ. 9206 (ER), 2019 WL 4735370, at *5 (S.D.N.Y. Sept. 27, 2019) (citation omitted). To show "unconscionable injury," the plaintiff must allege "injuries beyond those that flow naturally from the defendant's non-performance or from the plaintiff's continuing performance of the unenforceable agreement." Darby, 568 F. Supp. 2d at 341 (quoting Mobile Data Shred, Inc. v. United Bank of Switz., No. 99 Civ. 10315, 2005 WL 351516, at *4 (S.D.N.Y. Apr. 5, 2000)).

Delaney does not argue that she has satisfied the "unconscionable injury requirement" and instead rests on her position that the Statute of Frauds does not apply. (Opp. at

23.) As the Court already held, the oral agreement is within the Statute of Frauds. Delaney's only alleged injury is her loss of a portion of the attorneys' fees awarded in the Peterson cases, which is not an unconscionable injury for purposes of a promissory estoppel claim. See Darby, 568 F. Supp. 2d at 341 ("[I]n the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, foregone business opportunities or damage to business reputation." (quoting Mobile Data Shred, 2005 WL 351516, at *4)). The promissory estoppel claim therefore fails.

    d. Fraud

Delaney's complaint also asserts a fraud claim against Rothenberg. (Compl. ¶¶ 158-70.) Rothenberg moved to dismiss that claim and, in her opposition brief, Delaney did not respond to Rothenberg's arguments and instead withdrew the claim. (Opp. at 24.) The fraud claim is therefore dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss [dkt. no. 26] is GRANTED. The Clerk of the Court is directed to mark this action closed and all pending motions denied as moot.

SO ORDERED.

Dated:  New York, New York
        February 3, 2020

_____
Loretta A. Preska
Senior U.S. District Judge